**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 13 2014, 6:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JENNIFER FLEMING, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 02A03-1307-CR-257 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1211-FA-46

**March 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Jennifer Fleming appeals her conviction of Dealing in Methamphetamine,[1] a class A felony, Possession of More Than 10 Grams of a Precursor,[2] a class D felony, and Possession of Marijuana, Hash Oil, Hashish, Salvia, or a Synthetic Drug,[3] a class A misdemeanor. Fleming presents the following restated issues for review:

1. Did the trial court err in admitting statements made to police by Fleming?

2. Did the trial court err in permitting a narcotics detective to give skilled witness testimony about the characteristics of personal drug use and drug dealing?

3. Was the evidence sufficient to support Fleming's conviction for dealing in methamphetamine?

We affirm.

The facts favorable to the convictions are that at about 11:00 p.m. on November 21, 2012, Detective Mark Deshaies of the Fort Wayne Police Department saw Fleming operate her vehicle across the centerline on U.S. 33 and initiated a traffic stop. As he approached her, Detective Deshaies observed that Fleming's hands were shaking, she moved in short, jerky motions, and her eyes blinked rapidly. In Detective Deshaies's experience, these were symptoms of methamphetamine consumption. He asked Fleming to exit her vehicle and perform field sobriety tests. Once outside the vehicle, Fleming hopped from foot to foot, made quick motions with her hands, adjusted her shirt, and twitched. Fleming failed the first two sobriety tests administered and therefore was placed under arrest for being under the

---

[1] Ind. Code Ann. § 35-48-4-1.1 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).
[2] I.C. § 35-48-4-14.5 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).
[3] I.C. § 35-48-4-11 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

influence of a narcotic drug.

Detective Kurt Franceus of the Fort Wayne Police Department had arrived on the scene while Fleming was still in her car in order to provide assistance to Detective Deshaies if necessary. After Fleming was placed under arrest, Detective Franceus performed an inventory search of the vehicle prior to it being towed from the scene. In the trunk, Detective Franceus found, in a small mason jar, clear plastic baggies containing marijuana, with a total weight of 5.5 grams. He also found an orange bottle with a long tube pushed through it, which he recognized as a generator/smoker used to remove methamphetamine during the manufacturing process. Inside a makeup case, Detective Franceus found two plastic baggies containing a total of 192 pseudoephedrine pills. From Detective Franceus's experience, he knew that pseudoephedrine pills provided a base ingredient for manufacturing methamphetamine.

Following her arrest, Fleming was transported to the Allen County Jail. Upon arrival, Fleming was strip-searched by confinement officer Amy Jones-Schild. After Fleming removed her bra, she continued to hold onto it. Officer Jones-Schild directed Fleming to hand her the bra so she could inspect it. When Fleming handed it over for inspection, Jones-Schild noted that, attached to one of the straps via a cord, was a jewelry bag that "looked kinda like a balloon". *Transcript* at 59. A search revealed that the bag contained eight small baggies of methamphetamine weighing a total of 6.35 grams. Fleming's purse contained $410 in cash.

Fleming was subsequently charged with dealing in methamphetamine as a class A

3

felony, possession of precursors as a class D felony, possession of marijuana as a class A misdemeanor, and operating a vehicle with a controlled substance or metabolite in the body as a class C misdemeanor. The latter charge was dismissed prior to trial. She was found guilty on all charges following a jury trial. The trial court sentenced Fleming to forty years, with twenty suspended to probation, on the dealing charge, one and one-half years on the possession-of-a-precursor conviction, and one year on the marijuana charge, with all sentences to run concurrently.

1.

The events culminating in the present convictions occurred on November 21, 2012. Several months before, on August 27, 2012, Fleming was arrested in an unrelated case that also involved methamphetamine offenses. Detective Deshaies also participated in that arrest, and he spoke with Fleming after she was Mirandized. She indicated to Detective Deshaies "that she collected pseudoephedrine pills and in return would receive finished methamphetamine products and then she would in turn take the finished methamphetamine product and she would sell and trade that to gather more pills in essence." *Id.* at 103. Fleming told Detective Deshaies that "it was nothing to collect over up to 500 pills in a single day." *Id.* Fleming was subsequently released, apparently with the understanding that she would "work with" police officers in some unstated capacity. *Id.* at 20. According to the State, however, "that didn't pan out." *Id.*

She was arrested on the present charges the following November. The State sought to introduce the statements she made in August during Fleming's trial on the present offenses

4

for the purpose of illuminating Fleming's intent. Fleming contended at trial that the methamphetamine in her possession in November was intended for personal use and that she did not intend to deal it. The State argued that the statements relating to the August 27 arrest were admissible to prove Fleming's intent to deal in the present case. The trial court ruled that the statements were admissible for the reason indicated. In response, Fleming's attorney asked the court:

> Your Honor may, could that be limited to not giving times and dates just that she made those statements? Then the jury doesn't know that there's this incident in August where [sic] and I won't require [the State] to lay a foundation as to Miranda and where she was and how she was interviewed. If her statements are gonna come in I prefer for them to come in that she made the statements to the Detective without giving a time and place and circumstance. Once she started attaching those to it Your Honor then the jury's tipped off okay she had something going on in August and they're gonna see that this charge was sometime in November.

*Id.* at 25. The trial court subsequently admitted Detective Deshaies's testimony, subject to the requested limitation, over Fleming's objection.

2.

Fleming offers several rationales in support of the contention that her prior statements were inadmissible. The decision whether to admit or exclude evidence at trial is committed to the trial court's discretion, and that exercise of discretion will be afforded great deference on appeal. *VanPatten v. State,* 986 N.E.2d 255 (Ind. 2013). We will not reverse such a decision unless it is clearly contrary to the logic and effect of the facts and circumstances of the case or misinterprets the law. *Id*.

Fleming first claims her statements in the prior, unrelated matter should have been

5

excluded because they were given based upon promises of mitigation and immunity in return for her cooperation with law enforcement authorities. We cannot find anything in the record that provides factual support for this assertion. Detective Deshaies was prevented from offering any testimony about that prior arrangement, if any, on the strength of a motion submitted by Fleming. All that can be discerned from the record is that Fleming was arrested for a methamphetamine-related offense on August 27, that she was released with the anticipation that she would "work with" police, but that did not "pan out." *Id.* at 20. There is no discussion concerning the manner in which she would work with the police, nor was there any indication that her agreement to work with police was somehow related to the statements in question. Thus, this assertion lacks a sufficient factual basis and must be rejected.

Fleming next claims the statements were inadmissible under Indiana Evidence Rule 404(b), which provides, in relevant part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This rule "is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt." *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013) (quoting *Byers v. State*, 709 N.E.2d 1024, 1026-27 (Ind. 1999)). On the other hand, the rule does permit the introduction of evidence of other criminal activity in certain cases to prove the accused's identity, knowledge, intent or motive, or to demonstrate the common plan or scheme of criminal activity from which the accused originated the charged crime. *Lafayette v. State*, 917 N.E.2d 660 (Ind. 2009).

The trial court admitted Fleming's prior statements pursuant to the intent exception.

6

Our Supreme Court has discussed the requirements pertinent to admitting evidence of prior

activity under Rule 404(b) under this exception, as follows:

> Mindful of the variety of judicial perspectives regarding the proper role of prior conduct evidence in the ascertainment of truth, we conclude that Indiana is best served by a narrow construction of the intent exception in Evid. R. 404(b). It does not authorize the general use of prior conduct evidence as proof of the general or specific intent element in criminal offenses. To allow the introduction of prior conduct evidence upon this basis would be to permit the intent exception to routinely overcome the rule's otherwise emphatic prohibition against the admissibility of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith.

*Id.* at 799 (quoting *Wickizer v. State,* 626 N.E.2d 795 (Ind. 1993)). Accordingly, the Court

held in *Lafayette* that the intent exception "is available when a defendant goes beyond merely

denying the charged culpability and alleges a particular contrary intent, whether in opening

statement, by cross-examination of the State's witnesses, or by presentation in defendant's

own case-in-chief." *Lafayette v. State*, 917 N.E.2d at 663.

When discussing the admission of this evidence outside the presence of the jury,

Fleming's attorney did not dispute the State's assertion that "the Defense has been pretty well

laid out already that they're going to argue that it was for personal use." *Transcript* at 62.

That is, Fleming's defense was that the methamphetamine found in her possession was

intended for her personal use, not for dealing to others. Of course, if true, this would have

negated an essential element of the dealing charge, i.e., possession with intent to

manufacture, finance the manufacture of, deliver, or finance the delivery of

methamphetamine. *See* I.C. § 35-48-4-1.1. Therefore, we agree that Fleming alleged "a

particular contrary intent" with respect to her possession of the methamphetamine. *Lafayette*

7

*v. State*, 917 N.E.2d at 663. In such case, the State is permitted to respond "by offering evidence of prior crimes, wrongs, or acts to the extent generally relevant to prove the defendant's intent at the time of the charged offense." *Id.*

Upon determining that the disputed evidence was relevant on the question of Fleming's intent, the trial court was required to determine if its probative value was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403. The trial court did this and concluded that the probative value outweighed the danger of unfair prejudice.

The trial court has wide latitude in weighing the probative value of evidence against possible prejudicial impact of its admission. *Freed v. State*, 954 N.E.2d 526 (Ind. Ct. App. 2011). Detective Deshaies's testimony was introduced in order to refute Fleming's theory of defense that the contraband found in her possession was intended only for personal use, and not for dealing. We first observe that Fleming's previous statement was relevant for purposes other than suggesting propensity to commit the offense charged. The jury was not informed that the statements stemmed from an earlier incident, and in fact had no reason to believe that they were not given in relation to the present charges. The previous incident was recent enough in time and near enough in character to be relevant on the question of Fleming's intent with respect to the present charged dealing offense. Finally, we note that the trial court offered to give a limiting instruction that Fleming's statements were to be considered only for the purpose of determining her intent with respect to the

methamphetamine found in her possession. Defense counsel declined, stating "I don't know that there needs to be a limiting instruction because as long as it's coming in that there was a conversation … that they had but not that it was of some sort of other investigation. So I don't think at this point we need the limiting instruction." *Transcript* at 65-66. Accordingly, we cannot say that the trial court abused its discretion under Rules 403 and 404(b) in admitting Fleming's previous statements.

3.

Fleming contends the trial court erred in permitting Detective Deshaies to give skilled witness testimony about the characteristics of personal drug use and drug dealing. "The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000)). Fleming failed to object to the testimony in question. Moreover, we note that Fleming does not argue that she was subjected to fundamental error as a result of Detective Deshaies's testimony. The argument is waived. *Oldham v. State*, 779 N.E.2d 1162 (Ind. Ct. App. 2002), *trans. denied*.

4.

Fleming contends the evidence was not sufficient to support her conviction for dealing in methamphetamine. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e

9

affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted).

Fleming does not challenge the sufficiency of evidence relating to the underlying possession of methamphetamine. Rather, she claims the evidence is not sufficient to prove that she possessed the methamphetamine with intent to deliver. In support of this claim, she cites her own testimony that the 6.35 grams of methamphetamine found in her possession would last for only a few days at her then-current rate of consumption. She also testified that she possessed the pseudoephedrine pills only in order to turn them over to drug dealers and cooks in exchange for methamphetamine. She explained that the relatively large amount of money found on her person was compensation for work she had done in cleaning a friend's home. Finally, she testified that the bottle and cap found in her car were used as a water bong to smoke methamphetamine, not as a "smoker" used in the production of methamphetamine. Of course, the jury was not obliged to believe Fleming's testimony. *Thompson v. State*, 804 N.E.2d 1146 (Ind. 2004).

The element in question – intent – is a mental function. Thus, except where there has been an admission, the factfinder must resort to reasonable inferences based upon a consideration of the surrounding circumstances in order to determine whether, "from the person's conduct and the natural consequences thereof – there is a showing or inference of the requisite criminal intent." *Diallo v. State*, 928 N.E.2d 250, 253 (Ind. Ct. App. 2010)

10

(quoting *M.Q.M. v. State,* 840 N.E.2d 441, 446 (Ind. Ct. App. 2006)). Detective Deshaies testified that the amount of methamphetamine possessed by Fleming was a "very large quantity", which would "basically effectively keep someone high for up to a week or more, twenty-four (24) hours a day non-stop [.]" *Transcript* at 109 and 110, respectively. He also testified that the amount of methamphetamine in Fleming's possession would cost between $600 and $700. The evidence indicated that Fleming was an unemployed student at the time. From this and other evidence, including Fleming's statements concerning the August 27 incident, the jury could reasonably have inferred that Fleming intended to sell at least some of the methamphetamine. We will not revisit that determination. Viewed in a light favorable to the conviction, the evidence was sufficient to support this finding.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.